2021 IL App (1st) 192191-U

No. 1-19-2191

Order filed October 18, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 5829 |
| | ) | |
| VENTURA MENDOZA-CERESO, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Walker and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not commit plain error by failing to give Illinois Pattern Jury Instructions, Criminal, No. 3.06-3.07 (approved Oct. 17, 2014), and trial counsel was not ineffective for failing to object and preserve the issue for appellate review.

¶ 2    A jury convicted Ventura Mendoza-Cereso on two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2010); (West 2012)) and three counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2012); (West 2014)). And the trial court sentenced him to an aggregate term of 31 years in prison. On appeal, Mendoza-Cereso contends

that the trial court committed plain error by failing to give Illinois Pattern Jury Instructions, Criminal, No. 3.06-3.07 (approved Oct. 17, 2014), which is called "Statements By Defendant." Alternatively, Mendoza-Cereso contends that his trial counsel was ineffective for failing to object and preserve the issue for appellate review.

¶ 3　　We affirm. Instruction No. 3.06-3.07 has nothing to do with the elements of the crime charged, the presumption of innocence, or the question of burden of proof and so the trial court did not err in failing to give the instruction on his own, and, without an error, there can be no plain error. In addition, we find that no prejudice resulted from defense counsel's failure to object to the absence of IPI 3.06-3.07. The jury received IPI 1.02 and, in light of the victim's testimony and the other evidence, the outcome would not have been different had the instruction been given.

¶ 4　　　　　　　　　　　　　　Background

¶ 5　　Mendoza-Cereso's conviction arose from events that involved A.L. between 2010 and 2015. Following his arrest, Mendoza-Cereso was charged by indictment with five counts of predatory criminal sexual assault of a child (counts I through V), thirteen counts of criminal sexual assault (counts VI through XVIII), and nine counts of aggravated criminal sexual abuse (counts XIX through XXVII). The State proceeded to trial on counts I, V, VII, X, and XIII, and nol-prossed the remaining counts.

¶ 6　　At trial, A.L., who was 18 at the time of trial, testified that she was born in October 2000. Since about age five, she, her mother, and her brother, D.L., lived with Mendoza-Cereso, whom she referred to as her "stepdad" and agreed was "like a father," in a two-bedroom apartment. Her mother regularly worked the night shift, during which time Mendoza-Cereso looked after A.L. and D.L.

¶ 7    In the summer of 2010, when A.L., her relationship with Mendoza-Cereso changed after "an incident." A.L. and D.L. were in the living room when Mendoza-Cereso called her to her bedroom. First, Mendoza-Cereso told her to lie face up on his lap. Once A.L. did so, Mendoza-Cereso began to "caress" her body, unzipped her pants, pulled them down, and placed his hands on her vagina. He touched her vagina with his fingers for about two minutes. Mendoza-Cereso then told her not to tell anyone, and they left to get pizza.

¶ 8    When asked how often Mendoza-Cereso would touch her vagina with his hands, A.L. answered that "[i]t was a regular thing" when she was about nine and ten years old. At 10, Mendoza-Cereso's behavior progressed, and he began inserting his fingers inside her vagina. This usually happened at night. Mendoza-Cereso would come into her room while she was sleeping. Her mother would be at work, and D.L. would be sleeping in the living room. Mendoza-Cereso would rub A.L.'s thigh, caress her legs, and take off her pajamas and underwear. He would then spread her legs and put his fingers inside her, which was uncomfortable, and tell her not to say anything.

¶ 9    After A.L. turned 11, things progressed again. One night while her mother was at work and D.L. was in the living room, Mendoza-Cereso came into A.L.'s room, took off her pajamas and underwear, and spread her legs. He then got on top of her, inserted his penis inside her vagina, moved forward and backward, and moaned. A.L. described the experience as painful and extremely uncomfortable.

¶ 10    A.L. testified that Mendoza-Cereso had sexual intercourse with her two more times before she turned 13. Both times, her mother was at work, and D.L. was in the living room. On those nights, Mendoza-Cereso came into her bedroom, removed her pajama pants and underwear, got

on top of her, inserted his penis inside her vagina, moved forward and backward, and moaned. A.L. recalled that Mendoza-Cereso ejaculated on the first occasion but did not recall if he did on the second.

¶ 11   After A.L. turned 13, Mendoza-Cereso had anal intercourse with her. One night when her mother was at work and D.L. was sleeping in the living room, Mendoza-Cereso came into her room, took off her pajama pants, turned her over, and inserted his penis inside her "butt." He moved forward and backward and then ejaculated on her back. A.L. described it as "wet and gooey." Next, Mendoza-Cereso retrieved a paper towel from the kitchen, wiped off her back, turned her over, and inserted his penis inside her vagina. Again, he moved forward and backward and moaned. A.L. said it "hurt a lot."

¶ 12   A.L. testified that Mendoza-Cereso had anal sex with her again when she was 13 or 14 years old. On another night Mendoza-Cereso came into her bedroom, took off her pajama pants and underwear, turned her over, and inserted his penis inside her "butt," which was painful. He moved forward and backward and moaned, but A.L. did not remember whether he ejaculated.

¶ 13   When A.L. was 13, she sometimes slept on the couch in the living room while D.L. slept in the bedroom. One night, she woke up because Mendoza-Cereso "ha[d] his penis on [her] face or on [her] lips, rubbing." On another night when she slept on the couch, Mendoza-Cereso forced her to put her hand on his penis and "move it up and down." He ejaculated on A.L.'s "covers."

¶ 14   On cross-examination, A.L. testified that in 2015, when she was in eighth grade, she was part of a "Peace Circle" at school. Other students talked about things that had happened to them, and A.L. shared what had happened to her for the first time. A.L. stated she did not tell her family until March 2015. On redirect examination, A.L. explained that she did not tell any family because

she felt scared and wanted to protect her family. She stated, "If [a] man was capable enough to hurt a little girl at the age of nine for about three or four years of sexual abuse, I just thought he would be capable of doing something else to my family."

¶ 15    A.L.'s mother, Guillermina Hernandez, testified through an interpreter that for 15 years, she had been working from midnight to 8 a.m. at a plastics company. She started dating Mendoza-Cereso in 2005. He moved in with her and her children about six months later and lived with them for 10 years. Hernandez and Mendoza-Cereso shared a bedroom, A.L. had a bedroom, and D.L. slept on the sofa. Mendoza-Cereso stayed with the children while Hernandez worked "because he was like their father." Mendoza-Cereso supported the family financially and otherwise treated them well.

¶ 16    Hernandez stated that Mendoza-Cereso was arrested on March 12, 2015. Two days later, Hernandez was in a car with A.L. and D.L. when Mendoza-Cereso called her. D.L. answered and handed the phone to her. In court, Hernandez relayed her conversation with Mendoza-Cereso:

"He called me. He asked me, what are you doing? And I told him, why did you do this? And he said I did not want to do it. I asked him, you know, I thought I lived with a man. I told him, please, you have to pay for what you have done to me. And he said that's fine. I am in your hands."

¶ 17    On cross-examination, Hernandez testified that Mendoza-Cereso made the phone call from jail. The call was not on speakerphone; she was the only person who spoke with Mendoza-Cereso beyond D.L.'s saying "hello" when he answered.

¶ 18    D.L. testified that Mendoza-Cereso treated his family "special" and supported them financially. His relationship with Mendoza-Cereso was like that of a father and son, and A.L.'s relationship with Mendoza-Cereso was like that of a father and daughter. In 2014 and 2015, there

were occasions when D.L. would sleep on the living room couch. Three or four times during that time, he would wake up at 3 or 4 a.m. and see Mendoza-Cereso walking out of A.L.'s bedroom. He did not think it was strange because Mendoza-Cereso was a caring person. D.L. did not tell anyone about what he saw until he spoke with the detectives. He "never thought [Mendoza-Cereso] would do something like that to us."

¶ 19    On March 12, 2015, D.L. was home when detectives arrived and arrested Mendoza-Cereso. Two days later, D.L. was in a car with his mother and A.L. when his mother's phone rang. He answered, recognized Mendoza-Cereso's voice, and gave the phone to his mother.

¶ 20    On cross-examination, D.L. testified that he never asked Mendoza-Cereso what he was doing in A.L.'s room at 3 or 4 a.m. He agreed that A.L.'s room was "next to" the living room, and that he never heard any strange sounds coming from her bedroom.

¶ 21    Mendoza-Cereso made a motion for a directed verdict, which the trial court denied. Mendoza-Cereso did not testify or present evidence.

¶ 22    Outside the presence of the jury, the parties conducted a jury instruction conference. Among the instructions the State offered was IPI 3.06-3.07. The trial court and an Assistant State's Attorney discussed the instruction:

> "THE COURT: Okay. [People's number] 9 is 3.06-3.07, I thought that applied when statements were to a police officer rather than civilian.
>
> [ASSISTANT STATE'S ATTORNEY]: It does. I didn't know if the State—
>
> THE COURT: You are going to withdrawing [*sic*] that altogether? 3.06-3.07 is withdrawn. So I'll just call the next one actually 9 since you are withdrawing the previous one."

Defense counsel did not object.

¶ 23     During closing argument, the ASA told the jury that circumstantial evidence of Mendoza-Cereso's guilt included "the phone call to mom." The ASA then stated as follows:

> "[Hernandez] took the stand, and she told you that she spoke to the defendant on the phone. And when they spoke, she asked him why did you do this to my daughter? Why did you do this to our family? And his response was, I didn't want to do it. My life is in your hands. That's circumstantial evidence."

In rebuttal argument, the ASA asserted, among other things, that A.L.'s trial testimony was corroborated by D.L. and by Hernandez. Specifically, the ASA stated, "And you heard from [A.L.'s] mom. And when she asked the defendant on the telephone why he did this? He said, I didn't want to, and I'm in your hands. See, we do have corroboration. We have [A.L.'s] testimony. We have her brother's testimony. And we have her mom's testimony."

¶ 24     Following closing arguments, the trial court read the final jury instructions to the jury. Among others, the trial court gave an instruction based on Illinois Pattern Jury Instructions, Criminal, No. 1.02 (4th ed. 2000):

> "Only you are the judges of the believability of witnesses and of the weight to be given to each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case."

¶ 25     The jury found Mendoza-Cereso guilty of two counts of predatory criminal sexual assault of a child (counts I and V) and three counts of criminal sexual assault (counts VII, X, and XIII).

¶ 26    Defense counsel filed a timely motion for a new trial. Shortly after that, Mendoza-Cereso filed two *pro se* "affidavits" alleging his trial counsel was ineffective for, among other things, advising him not to testify and failing to investigate "phone records" of the call he placed to Hernandez. Mendoza-Cereso also stated in his affidavits that he had filed a complaint with the Attorney Registration & Disciplinary Commission, thus creating a conflict of interest with trial counsel.

¶ 27    Next, defense counsel filed a supplementary motion for a new trial, and Mendoza-Cereso requested to proceed *pro se*, which the trial court granted. Subsequently, the trial court conducted a preliminary inquiry under *People v. Krankel*, 102 Ill. 2d 181 (1984), after which it rejected Mendoza-Cereso's claim of ineffectiveness. The trial court re-appointed defense counsel and denied the initial and supplementary motions for a new trial.

¶ 28    Following a sentencing hearing, the trial court imposed consecutive sentences of eight years on count I, eight years on count V, five years on count VII, five years on count X, and five years on count XIII, for an aggregate sentence of 31 years in prison. Mendoza-Cereso's motion to reconsider sentence was denied.

¶ 29                                            Analysis

¶ 30                              *Failure to Give IPI 3.06-3.07*

¶ 31    On appeal, Mendoza-Cereso contends the trial court committed plain error by failing to give IPI 3.06-3.07. He argues that the State's evidence was far from overwhelming, as there was no physical evidence against him and only two pieces of evidence supported A.L.'s allegations, namely, D.L.'s testimony he saw Mendoza-Cereso twice leaving A.L.'s room late at night, and the "alleged confession" Mendoza-Cereso made during the phone call to Hernandez. He also argues

that the court's error was serious. He asserts that because confessions can be both overly persuasive and unreliable, the trial court was required to give IPI 3.06-3.07, instructing the jury to consider whether he made the alleged statement and the weight it should be given based on the circumstances under which it was made. He argues that the trial court was incorrect as a matter of law to "withdraw" the instruction as the alleged statement was not made to a police officer and, in his reply brief, asserts the trial court incorrectly ruled the instruction was inapplicable. Mendoza-Cereso maintains that the trial court's failure to give IPI 3.06-3.07 denied him a fair trial.

¶ 32    We initially note that a defendant generally forfeits review of an alleged jury instruction error if they do not object or offer an alternative instruction at trial and do not raise the issue in a posttrial motion. *People v. Herron*, 215 Ill. 2d 167, 175 (2005). In addition, Illinois Supreme Court Rule 366(b)(2)(i) (eff. Feb. 1, 1994) provides that "[n]o party may raise on appeal the failure to give an instruction unless the party shall have tendered it." Here, defense counsel did not tender the instruction, object at trial, or include the issue in a posttrial motion. Thus, he forfeited the issue. Nevertheless, Mendoza-Cereso requests we reach his claim of instructional error under plain error review.

¶ 33    Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013) provides that "substantial defects" in criminal jury instructions "are not waived by failure to make timely objections thereto if the interests of justice require." Rule 451(c) is coextensive with the plain error rule and construed identically. *People v. Downs*, 2015 IL 117934, ¶ 14. Under the plain error doctrine, a reviewing court may consider unpreserved error when (i) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (ii) a clear or obvious error occurred and

that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). Before determining whether an alleged error rises to the level of a "substantial defect" or "plain error," we first decide whether an error occurred because, without error, there can be no plain error. *People v. Hood*, 2016 IL 118581, ¶ 18. We find no error.

¶ 34 We review a trial court's determination as to what instructions to give for an abuse of discretion. *People v. Khan*, 2021 IL App (1st) 190679, ¶ 80. In making this determination, a reviewing court must examine whether the instructions given—taken as a whole—fairly, fully, and comprehensively apprised the jury of the relevant law, an issue we review *de novo*. *Id.*

¶ 35 Mendoza-Cereso argues that IPI 3.06-3.07 should have been given, and the trial court "was incorrect as a matter of law to withdraw" the instruction and "incorrectly ruled that it was inapplicable." A close reading of the record, however, reveals that while the trial court posed a question about the instruction's applicability, he did not rule on the issue. Instead, the court stated, "I thought that applied when statements were to a police officer rather than civilian." The ASA answered affirmatively, and then, the State, not the trial court, withdrew the instruction. Specifically, the court stated to the ASA: "You are going to withdrawing [*sic*] that altogether? 3.06-3.07 is withdrawn. So I'll just call the next one actually 9 since you are withdrawing the previous one."

¶ 36 Given the State withdrew IPI 3.06-3.07, Mendoza-Cereso's argument essentially becomes that the trial court still should have given the instruction. In general, a trial court has no obligation to instruct the jury on its own motion. *People v. Parks*, 65 Ill. 2d 132, 137 (1976). A fair trial in criminal cases requires the court on its own to offer instructions concerning the elements of the

crime charged, the presumption of innocence, and the question of burden of proof. *Id.*; *People v. Franklin*, 135 Ill. 2d 78, 103 (1990); *People v. Turner*, 128 Ill. 2d 540, 562-63 (1989). Where an instruction involves none of those issues, a trial court does not commit error. *Franklin*, 135 Ill. 2d at 103; *Turner*, 128 Ill. 2d at 562-63.

¶ 37        Here, the instruction at issue, IPI 3.06-3.07, called "Statements by Defendant," provides:

> "You have before you evidence that [(the) (a)] defendant made [a] statement[s] relating to the offense[s] charged in the [(indictment) (information) (complaint)]. It is for you to determine [whether the defendant made the statement[s], and, if so,] what weight should be given to the statement[s]. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made." (Bracketed material in original.)

This instruction does not address the elements of the crime charged, the presumption of innocence, or the question of burden of proof. Accordingly, the trial court did not err in failing to give it on its own. *Franklin*, 135 Ill. 2d at 103; *Turner*, 128 Ill. 2d at 562-63. As noted, where there is no error, there can be no plain error. *Hood*, 2016 IL 118581, ¶ 18. Thus, Mendoza-Cereso's contention remains forfeited.

¶ 38                    *Claim of Ineffectiveness of Counsel*

¶ 39   Next, made in the alternative, Mendoza-Cereso contends his trial counsel was ineffective for failing to object to the lack of IPI 3.06-3.07 and failing to preserve the issue for appellate review. Mendoza-Cereso argues that where the State introduced his alleged statement to Hernandez as substantive evidence and used it in closing argument, his counsel had no strategic

reason to refrain from ensuing the jury was properly instructed on it. He asserts that the evidence was closely balanced and so he has established the prejudice prong for ineffective assistance of counsel.

¶ 40    To succeed on a claim of ineffective assistance of counsel, a defendant demonstrates that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In addition, a defendant must establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" means a probability sufficient to undermine confidence in the outcome. *Id.* If a claim may be determined on the basis of no prejudice, a reviewing court need not consider whether counsel's performance was deficient. See *id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice *** that course should be followed.").

¶ 41    Here, we need not determine whether counsel's representation fell below an objective standard of reasonableness. We find that Mendoza-Cereso suffered no prejudice from the omission of IPI 3.06-3.07. When a defendant claims ineffectiveness based on the failure to request a particular jury instruction, we consider the omission of that instruction in light of the other instructions given. *People v. Johnson*, 385 Ill. App. 3d 585, 599 (2008). "Instructions should not be viewed in isolation, but should be considered as a whole." *People v. Hester*, 131 Ill. 2d 91, 98 (1989). Jury instructions must be evaluated in their entirety to determine whether they fairly, fully, and comprehensively informed the jury of the relevant law. *Johnson*, 385 Ill. App. 3d at 599.

¶ 42    On this issue, we find persuasive this court's recent decision in *People v. Perez*, 2021 IL App (1st) 180765-U, ¶¶ 86-88. In *Perez*, the defendant made an incriminating statement to the

police. *Perez*, 2021 IL App (1st) 180765-U, ¶¶ 23-24. The jury was given IPI 1.02 but not IPI 3.06-3.07. *Id.* ¶ 88. On appeal, the defendant contended, among other claims, that IPI 3.06-3.07 should have been submitted to the jury. *Id.* ¶ 77. This court disagreed because IPI 1.02 had been given, and the jury properly admonished regarding every witness's testimony, including the police officer who testified on the defendant's statement. *Id.* ¶ 88. This court also found that although IPI 3.06-3.07 was "pointedly applicable to a defendant's statement," it would have had no different effect on the jury's assessment of the defendant's statements than did IPI 1.02. *Id.*

¶ 43    Here, as in *Perez*, the jury was given IPI 1.02. The instruction informed the jury of its responsibility as the sole judge of witnesses' believability and the weight to be given their testimony. See *People v. Steidl*, 142 Ill. 2d 204, 238 (1991). The instruction further informed the jury it could consider the circumstances of witnesses' memory, manner, interest, bias, or prejudice. See IPI 1.02. If given, IPI 3.06-3.07 would have informed the jurors that it was for them to determine whether Mendoza-Cereso made the statement attributed to him and, if so, what weight should be given to it. Thus, as in *Perez*, we conclude that IPI 3.06-3.07 would have had no different effect than IPI 1.02 on the jury's assessment of the statement.

¶ 44    Moreover, we agree with the State that it presented overwhelming evidence of Mendoza-Cereso's guilt. A.L. testified in detail about the numerous times Mendoza-Cereso assaulted her. D.L.'s testimony that he saw Mendoza-Cereso leaving A.L.'s bedroom in the middle of the night corroborated A.L.'s version of events. Evidence may be deemed overwhelming even in the absence of physical evidence, a confession, or where a defendant questions the credibility of witnesses. See *People v. Weston*, 2011 IL App (1st) 092432, ¶¶ 38-42; see also *People v. Bost*, 80 Ill. App. 3d 933, 944 (1980) (evidence overwhelming despite some conflicting testimony); *People*

*v. Gray*, 2017 IL 120958, ¶ 36 (if positive and credible, testimony of single witness sufficient to convict, even where contradicted by defendant). Given the overwhelming evidence of guilt, we cannot find prejudice by his trial counsel in regard to IPI 3.06-3.07. See *People v. Houston*, 363 Ill. App. 3d 567, 576 (2006) (finding no prejudice where evidence of guilt overwhelming and tendering of particular instruction would not have changed outcome); *People v. Martin*, 408 Ill. App. 3d 44, 52 (2011) ("Because [defendant] has not established a reasonable probability that he would have achieved a better result if defense counsel had not erred, [defendant] has not shown that he received ineffective assistance of counsel."). Accordingly, Mendoza-Cereso's claim of ineffectiveness fails.

¶ 45    Affirmed.