# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Roman*, 2013 IL App (1st) 102853

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL ROMAN, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-2853 |
| Filed<br>Rehearing denied | May 8, 2013<br>June 10, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for first degree murder and robbery were affirmed over his contentions that the trial court inaccurately recalled the evidence presented at trial, since the evidence against defendant was overwhelming and the trial court's misstatement about the evidence did not result in the denial of defendant's right to due process, but the mittimus was corrected to reflect only one conviction for first degree murder. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-3180; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed as modified. |

Counsel on
Appeal

Michael J. Pelletier and S. Amanda Ingram, both of State Appellate
Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Peter
Fischer, and Whitney Bond, Assistant State's Attorneys, of counsel), for
the People.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Sterba and Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Daniel Roman was convicted of robbery and first degree murder following a
bench trial and sentenced to concurrent, respective terms of 7 and 35 years' imprisonment.
On appeal, Roman contends that his conviction should be reversed and the matter remanded
for a new trial because the trial court inaccurately believed that the physical evidence
recovered from the scene corroborated eyewitness testimony and that the victim's cellular
phone had been taken. He also requests that the mittimus be corrected to reflect one
conviction for first degree murder.

¶ 2    We find that Roman forfeited his claim that the trial court inaccurately recalled the
evidence at trial. As to the mittimus, two of Roman's three convictions for first degree
murder should be vacated because there was only one decedent.

¶ 3                                BACKGROUND

¶ 4    Defendant, his brother Martin, Adolfo Zuniga, and Carlos Lopez, along with Roman's
cousins Ismael and Omar Morales, were charged with murder and robbery of the victim,
Francisco Reyes. The charges arose from events that occurred around midnight on December
23, 2007, and continued into the early morning hours of the following day at a tortilla factory
on the south side of Chicago. The victim, who was on the job operating a forklift at the
factory, was fatally beaten.

¶ 5    Roman elected a bench trial. He and was tried simultaneously with codefendant Ismael
Morales, whose case was heard by a jury. At trial, Luis Fernando Garcia testified that he
resided with his girlfriend, Sylvia Ortiz, and rented another apartment in the same building
to the uncle of Ismael, Omar Morales, and Lopez. Garcia knew those men, as well Roman
and Martin, from the neighborhood.

¶ 6    Shortly before midnight on December 23, 2007, Garcia heard Roman yelling outside. He
recognized the voice because Roman was always yelling outside his home. Garcia saw
Roman below his window talking on his phone and heard him yell for assistance to beat

someone. Garcia then saw Ismael, Martin, Omar, and Lopez approach Roman and watched as the five men crossed the street to the tortilla factory where the victim was operating a forklift in the parking lot. The area was well lit. There was nothing blocking Garcia's view. He observed Roman and the other men pull the victim off the forklift and begin to kick and punch him. While they were attacking the victim, another man, Zuniga, arrived, and Garcia saw them remove the victim's billfold. Martin crossed the street to a construction site, where he picked up a concrete rock, which one of the men dropped on the victim's head twice. At this point, the victim appeared to be unconscious, and the men scattered. When police arrived, Garcia did not tell them what happened because he was afraid of the men involved in the fatal beating.

¶ 7     On December 27, 2007, however, Garcia went to the police station. He spoke with Detective Jose Garcia and told him what had happened to the man on the forklift and named the offenders. He also identified Roman in a photograph shown to him by the detective, and in January 2008, Garcia identified the offenders in a lineup. At trial, Garcia was shown a rock, but testified that it was too small to have been the rock that was used to strike the victim.

¶ 8     Sylvia Ortiz testified that at 11:50 p.m. on December 23, 2007, she heard a noise, looked out of the kitchen window, and saw a man on a forklift exiting the tortilla factory. The area was well lit and nothing obstructed her view. Ortiz testified that she heard Roman, whom she knew from the neighborhood, talking on his phone outside her window. She did not hear what he said, but then saw five men arrive. She stood on a chair and looked out her skylight window and saw the men pull the victim off the forklift and kick and punch him. One of the men then crossed the street and picked up a concrete rock, which he used to hit the victim twice. When Ortiz was shown a rock in court, she indicated that it was not the rock used to hit the victim. She explained that the rock used was larger and flatter than the one shown to her in court. Ortiz further testified that while the men were beating the victim, another man arrived and began to hit the victim as well. Ortiz said that she saw the men remove the victim's wallet from his pocket.

¶ 9     Police later arrived, but Ortiz did not tell them what happened–she feared for her safety and that of her family. On January 1, 2008, Ortiz went to the police station and told Detective Garcia what she had seen. Ortiz identified four of the offenders, including Roman, from photo arrays and later identified those individuals again in a lineup.

¶ 10    During the trial, codefendant Ismael's counsel objected to the State's introduction of the rock exhibit. The court noted that the rock introduced in court was not the rock used on the victim and that the State was merely showing the witnesses what the police had recovered from the scene. The court explained that the rock exhibit was a demonstrative exhibit and showed that the rock used was more "menacing" than the rock recovered and displayed in court.

¶ 11    Detective Roberto Garcia testified that on December 26, 2007, he and his partner, Detective Swiderek, went to the tortilla factory to investigate. The detective had been informed that a piece of concrete was found under the forklift and moved to an area near the fence by one of the employees of the factory. Detective Garcia recovered and inventoried a

piece of concrete 10 inches by 10 inches from the area. When asked if there were other pieces of concrete there, the detective responded that a construction site was located across the street.

¶ 12 The following day, Detective Roberto Garcia interviewed Fernando Garcia, who informed him that Roman was one of the offenders involved in the fatal beating. Garcia later viewed a lineup and identified Roman as one of the offenders.

¶ 13 The parties stipulated that the recovered piece of concrete was tested by forensic scientist Jamie Jett for the presence of hair and fibers using methods generally accepted in the forensic science community. Jett opined that the recovered piece "had nothing of apparent evidential value."

¶ 14 Detective Chris Matias testified that during the late evening hours of January 8, 2008, and into the following morning, he interviewed Roman several times, but Roman did not make any inculpatory statements. But, about 7 a.m., Roman told him in a recorded audio statement that he "beat his ass," and acted alone. Roman later denied his involvement in the fatal beating of the victim, maintaining that he had no knowledge of the incident.

¶ 15 Medical examiner Dr. Mitra Kalelkar testified that he performed the autopsy on the victim. The autopsy revealed numerous abrasions to the head, as well as hemorrhages to the brain, and skull fractures. The injuries were consistent with being kicked and punched in the head multiple times.

¶ 16 Roman rested without presenting any testimonial evidence. During closing arguments, defense counsel asserted that Roman was misidentified and that the eyewitnesses were not credible.

¶ 17 The court subsequently found Roman guilty of murder and robbery. In doing so, the court said that it found the State's occurrence witnesses credible and compelling beyond a reasonable doubt. The court noted that the witnesses had a strong basis for identification, due to their previous familiarity with Roman, and that the victim's "cell phone was taken." The court further found that the evidence was substantiated, specifically noting that the "eyewitness testimony was corroborated by physical evidence that was recovered from the scene, from photos at the scene, from the coroner's report indicating the cause of death and the injuries suffered."

¶ 18 On appeal, Roman contends that his conviction should be reversed and the cause remanded for a new trial because the trial court inaccurately believed that the physical evidence recovered from the scene corroborated the eyewitness testimony and that the victim's cellular phone had been taken. He acknowledges that he did not raise this issue below, but maintains that it should be reviewed as plain error because the evidence at trial was closely balanced, and that the court's incorrect recollection of the evidence denied him due process and a fair trial.

¶ 19 To preserve an issue for review, defendant must object at trial and raise the matter in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Here, Roman did neither. Thus, he forfeited the issue for review. *Enoch*, 122 Ill. 2d at 186. Under the narrow and limited plain error exception to the general forfeiture rule, a reviewing court may consider forfeited errors where the evidence was closely balanced or where the error was so

egregious that defendant was deprived of a substantial right and thus a fair trial. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). To obtain relief, defendant must first show that there was a clear or obvious error. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The burden of persuasion remains with defendant, and the first step in plain error review is to determine whether any error occurred. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). For the reasons that follow, we find none here to excuse Roman's forfeiture of this issue.

¶ 20    Roman maintains that the court inaccurately believed that a cellular phone was taken from the victim and that the concrete rock recovered from the scene corroborated the eyewitnesses' account of the fatal beating when, in fact, the rock was stipulated to have no evidential value. The bases for his claim stem from the comments made by the court in arriving at its determination of guilt at the close of evidence, specifically, the court's reference to (i) a "phone" being taken from the victim, when it was his wallet, and (ii) the physical evidence corroborating the eyewitness testimony, which Roman refutes. Roman concludes that he was denied his right to due process and a fair trial by the court's incorrect recollection of the State's evidence.

¶ 21    In support of this contention, Roman relies on *People v. Bowie*, 36 Ill. App. 3d 177, 180 (1976), and *People v. Mitchell*, 152 Ill. 2d 274, 322-23 (1992), where the reviewing courts held that reversible error occurred when the trial court failed to recall or consider the crux of defendant's defense when entering judgment. In *Bowie*, after defendant had testified, counsel argued during closing that an officer had struck him in the head twice causing him to bleed. The court commented during defendant's closing argument that there was no evidence of this, striking defense counsel's argument to the contrary. *Bowie*, 36 Ill. App. 3d at 179-80. Under these circumstances, the reviewing court held that that the trial court had failed to recall or consider the crux of the defense, thereby denying defendant a fair trial. *Bowie*, 36 Ill. App. 3d at 180. Here, unlike *Bowie*, Roman did not testify or present any testimonial evidence or affirmative defenses that the court failed to recall. To the contrary, defense counsel argued misidentification during closing, and the court commented on the strong basis for the identifications made by the witnesses based on their familiarity with defendant.

¶ 22    In *People v. Mitchell*, defendant moved to suppress his confession claiming that police had no probable cause to arrest him and he was not free to leave the police questioning. *Mitchell*, 152 Ill. 2d at 307, 322-23. At the suppression hearing, Mitchell testified that police refused to let him go back into his house to obtain warmer clothing, told him he could not leave the police department, and would not let him leave the county building. *Mitchell*, 152 Ill. 2d at 321. The trial court denied the motion to suppress specifically noting that there was no testimony that defendant at any time said he felt he could not leave or that he asked if he could leave and was denied permission. *Mitchell*, 152 Ill. 2d at 307. The supreme court, citing *Bowie*, found that the trial court failed to recall the crux of defendant's defense resulting in the denial of his due process rights. *Mitchell*, 152 Ill. 2d at 322-23. Unlike *Bowie* and *Mitchell*, Roman did not present any testimonial evidence that the court failed to recall, and the court recalled the crux of Roman's defense, namely, misidentification, which he presented during closing argument.

¶ 23    In addition, we observe that the court did not indicate that the physical evidence it was

-5-

referring to as corroboration for the eyewitnesses' accounts was the concrete rock, but rather, the court referred to the totality of the physical evidence presented at trial, which included crime scene photos and the autopsy report of the cause of the victim's physical injuries, *i.e.*, multiple blows to the head. *People v. Beard*, 356 Ill. App. 3d 236, 242 (2005). Moreover, even if the court had found that the concrete rock was corroborating evidence, Roman was not denied his rights to due process and a fair trial because the physical evidence of the victim's injuries corroborated the eyewitnesses' accounts. *People v. Beard*, 273 Ill. App. 3d 135, 144 (1995).

¶ 24 The trial court's incorrect reference to a cellular phone taken from the victim, when it was a wallet, also does not rise to the level of plain error. When considered in context, it is apparent that the trial court merely misstated the item taken from the victim. Evidence was presented that Roman used a cell phone to summon other men to help commit the crime and that a wallet was taken from the victim. The court's misstatement did not go to the crux of the defense as in *Bowie*, 36 Ill. App. 3d at 179-80, nor did it result in the denial of his due process rights. *People ex rel. Reynolds v. Myers*, 58 Ill. App. 3d 373, 377 (1978).

¶ 25 Further, any alleged error did not amount to plain error where the evidence was not closely balanced, and any error was not serious. *Herron*, 215 Ill. 2d at 178-79. We observe that the evidence against Roman was overwhelming and included his recorded confession and the identification of Roman by two eyewitnesses who viewed the incident, had no motive to lie, and knew him from the neighborhood. In addition, the victim's physical injuries corroborated Roman's statement that he "beat" the victim and the witnesses' account that the victim was kicked and punched in the head and that a concrete rock was smashed on his head. *People v. Martin*, 408 Ill. App. 3d 44, 52 (2011).

¶ 26 Further, and contrary to Roman's contention, the eyewitnesses' failure to initially inform police that they had witnessed the incident and that Roman was one of the offenders involved did not render their identifications unreliable (*People v. Coli*, 2 Ill. 2d 186, 188-89 (1954)), where they explained that they did not initially contact police because they feared for their safety (*People v. Smith,* 362 Ill. App. 3d 1062, 1079 (2005)). Accordingly, we find no plain error to excuse Roman's forfeiture of this issue.

¶ 27 Roman next contends, the State concedes, and we agree, that the mittimus should be corrected to reflect only one conviction for first degree murder because there was only one decedent. *People v. King*, 66 Ill. 2d 551, 566 (1977). Pursuant to our authority set forth in Supreme Court Rule 615(b)(1), with regard to the conviction for first degree murder, we vacate Roman's convictions under counts II and III and correct the mittimus to reflect judgment on count I. *People v. McCray*, 273 Ill. App. 3d 396, 403 (1995).

¶ 28 In light of the foregoing, we affirm the judgment of the circuit court of Cook County as modified.

¶ 29 Affirmed as modified.