2022 IL App (1st) 220426-U

FIFTH DIVISION
July 21, 2023

No. 1-22-0426

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 18 CR 60170 |
| ANTON ASEVES, | ) ) | Honorable Peggy Chiampas, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Delort and Justice Mitchell concurred in the judgment.

ORDER

¶ 1 *Held*: The trial court did not err by denying the defendant's motion *in limine* and by making a finding of great bodily harm requiring the defendant to serve at least 85% of his sentence.

¶ 2 On December 9, 2021, following a jury trial, the defendant-appellant, Anton Aseves, was convicted of armed robbery and aggravated battery with a firearm. On March 15, 2022, the trial court sentenced Mr. Aseves to concurrent terms of 28 years for the armed robbery conviction and 13 years for the aggravated battery with a firearm conviction, requiring him to serve 85% of that sentence. On appeal, Mr. Aseves argues that the trial court erred by: (1) denying his motion *in*

*limine* to admit other crimes evidence; and (2) making a finding of great bodily harm for his armed robbery conviction. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                   BACKGROUND

¶ 4     On May 18, 2019, a grand jury indicted Mr. Aseves on five counts of attempted first degree murder of Vladimir Radanovich, one count of aggravated battery of Vladimir Radanovich, one count of armed robbery of Victor Guevara, one count of unlawful possession of a firearm, and four counts of aggravated unlawful use of a weapon. On June 16, 2021, Mr. Aseves filed his amended motion *in limine*, which in relevant part, sought to introduce testimony from two detectives who investigated two uncharged robberies, which occurred nearby within an hour after the robbery for which Mr. Aseves was charged. The witnesses each identified the offender as a black man, and the detectives' investigation determined that the same vehicle was identified as having been used in all three robberies, evidenced by the matching license plate. The victims of the two uncharged robberies were shown a photograph array, containing Mr. Aseves' photograph, and were unable to identify him as the offender. Mr. Aseves contended that, since the same person most likely committed all the robberies, the failure of those victims to identify him was exculpatory evidence, showing that he did not commit the charged robbery.

¶ 5     The State responded by arguing that the evidence was irrelevant since Mr. Aseves was not charged for the other robberies. The trial court denied that portion of Mr. Aseves' motion *in limine* without explanation.

¶ 6    The case proceeded to a jury trial on December 7, 2021. During the trial, the State called Mr. Guevara, Mr. Radanovich, and Elizabeth Hernandez as witnesses, as well as Chicago Police Department officers.

¶ 7    Mr. Guevara testified that on March 12, 2018, at approximately 1 p.m., he parked his work truck on 36th Street near Winchester Avenue. When he exited his truck and headed westbound on 36th Street to inspect a leaky gutter, he saw two individuals walking toward him from across the street. The taller individual was Mr. Aseves, and Mr. Guevara described him as a black man, wearing a coat and hat, with a tattoo beneath his eye and another on his neck. Mr. Guevara stated that Mr. Aseves pulled out a firearm, a long-barreled revolver, and told him to empty his pockets. Mr. Guevara took out his cell phone, keys, and approximately $25 and threw it onto the ground. The other offender picked up the items, while Mr. Aseves continued to point the firearm at Mr. Guevera. As Mr. Aseves and his co-offender walked away, Mr. Radanovich came out of an apartment building, located on the same side of the street as Mr. Guevara. Mr. Radanovich asked if Mr. Guevara had been robbed. Mr. Aseves then turned around and demanded that Mr. Radanovich empty his pockets, and Mr. Radanovich declined, walking quickly across the street into another apartment building. Mr. Guevara stated that he ran to his car and saw Mr. Aseves and his co-offender follow Mr. Radanovich into the apartment building. After 30 seconds, Mr. Aseves and his co-offender ran out of the building and down 36th Street on foot. Mr. Guevara jumped into his truck and followed the offenders and saw them jump into a dark blue minivan. Mr. Guevara then went back to where he was robbed and saw Mr. Radanovich hobbling in pain. Mr. Radanovich showed him that he had been shot and was bleeding. The police arrived on the scene and Mr. Guevara told them what occurred. On March 21, 2018, Mr. Guevara viewed a photograph array

and identified Mr. Aseves and the van he saw Mr. Aseves enter. On cross-examination, Mr. Guevara described Mr. Aseves as having a darker complexion and being black.

¶ 8    Mr. Radanovich testified that on March 12, 2018, at approximately 1:15 p.m. he left his sister's apartment and saw two men walking away from Mr. Guevara. The man on the right turned around and pointed a long-barreled firearm at him. He described the man with the firearm as African-American and made an in-court identification of Mr. Aseves as the man with the firearm. After Mr. Aseves pointed the firearm at him, Mr. Radanovich moved as quickly as he could to an apartment building with an open front door. Having one prosthetic knee, however, he was not able to move quickly. He walked into an empty apartment and once he reached a wall inside the apartment, he turned around and saw Mr. Aseves pointing a firearm at him. As Mr. Radanovich tried to locate a way to escape, he turned around and Mr. Aseves shot him in the right buttock, causing Mr. Radanovich to fall. On March 21, 2018, he was shown a photograph array and he identified Mr. Aseves as the person who shot him. When asked why he told the detective that he was 60 percent sure Mr. Aseves was the shooter, he testified that he told the detective that because he was scared. He stated that though he did not have a gun pointed at him on March 21, 2018, having a gun pointed at him was difficult "psychologically."

¶ 9    Elizabeth Hernandez also testified that she knew Mr. Aseves and that he was living with her on March 12, 2018. She stated that she owned a blue Chrysler Town & Country minivan and noticed that her keys to the minivan were missing from the place that she normally keeps them on March 12, 2018. She further testified that she found them later in the afternoon on March 12, 2018.

¶ 10   At the conclusion of the trial, the jury found Mr. Aseves not guilty as to the attempted murder count but guilty of the armed robbery of Mr. Guevara and aggravated battery with a firearm

of Mr. Radanovich counts. Mr. Aseves filed a motion for a new trial, citing the denial of the pretrial motion *in limine* and sufficiency of the evidence. The trial court denied the motion.

¶ 11    On March 15, 2022, during the sentencing hearing, the State asked for a finding of severe injury and that Mr. Aseves be sentenced to consecutive sentences. The State asked, alternatively, that the court make a finding of great bodily harm on the armed robbery conviction and that Mr. Aseves serve at least 85% of his sentence. The court found that there was no severe injury but did make a finding of great bodily harm. The court ruled that the sentence would be concurrent and required Mr. Aseves to serve 85% of his sentence since Mr. Aseves' conduct led to great bodily harm to someone other than the defendant. The court sentenced Mr. Aseves to 13 years on the armed robbery conviction along with the mandatory 15-year firearm enhancement. He was also sentenced to a concurrent term of 13 years' imprisonment for the aggravated battery with a firearm conviction, resulting in a total sentence of 28 years' imprisonment. Immediately, after the sentencing hearing, Mr. Aseves filed his notice of appeal.

¶ 12                                        ANALYSIS

¶ 13    We have jurisdiction to consider this matter, as Mr. Aseves filed a timely notice of appeal. See Ill. S. Ct. R. 606 (eff. July 1, 2017).

¶ 14    On appeal, Mr. Aseves argues that the court erred by denying his motion *in limine* to admit testimony from two Chicago Police Department detectives detailing two uncharged robberies and by making a finding of great bodily harm as to the armed robbery conviction.

¶ 15    "Courts generally prohibit the admission of [propensity] evidence to protect against the jury convicting a defendant because he or she is a bad person deserving punishment. [Citations.] Defendant is entitled to have his guilt or innocence evaluated solely on the basis of the charged

crime." *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). "Evidence of other crimes is objectionable not because it has little probative value, but rather because it has too much." *People v. Manning*, 182 Ill. 2d 193, 213 (1998).

¶ 16    "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order ** to show action in conformity therewith ***. Such evidence may [however] be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). "Evidence of other crimes in which a defendant may have participated is not admissible to show the defendant's propensity to commit crime. Such evidence, however, is admissible if relevant for any other purpose such as *modus operandi,* proof of motive, intent, identification, or absence of mistake." *People v. Coleman*, 158 Ill. 2d 319, 333 (1994).

¶ 17    "The use of other-crimes evidence to show identity, on the other hand, links the defendant to the offense at issue through some evidence, typically an object, from the other offense." *People v. Quintero*, 394 Ill. App. 3d 716, 726 (2009). If other-crimes evidence is offered for a relevant purpose, "it is admissible only when the other crime has a threshold similarity to the charged crime. [Citation.] The threshold requirement increases the relevancy of the evidence and ensures that it is not used solely to establish the defendant's criminal propensities." *Quintero*, 394 Ill. App. 3d at 725-26.

¶ 18    "An accused may, within certain limits, attempt to prove that someone else committed the crime with which he is charged." *People v. McCullough*, 2015 IL App (2d) 121364, ¶ 126. "The test of admissibility is whether the evidence fairly tends to prove the particular offense with which

the defendant is charged." (Internal quotation marks omitted.) *McCullough*, 2015 IL App (2d) 121364, ¶ 126.

¶ 19    In *People v. Cruz*, 162 Ill. 2d 314, 351 (1994), and *People v. Tate*, 87 Ill. 2d 134, 142 (1981), the defendants sought to admit other crimes evidence to show *modus operandi* and support their claims of innocence of the charged offense. In *Cruz*, 162 Ill. 2d at 350, the defendant was convicted of rape, murder, and kidnapping. The victim was a 10-year-old girl, who was kidnapped from her home before being raped in his car and bludgeoned to death by several blows to the head. *Cruz*, 162 Ill. 2d at 319. Her body was found several days later blindfolded in the underbrush on the Illinois Prairie Path near Illinois Route 5. *Cruz*, 162 Ill. 2d at 319. The defendant sought to introduce the statement of someone named Brian Dugan, an individual who confessed to killing the victim of the crime for which the defendant was charged. *Cruz*, 162 Ill. 2d at 331. The trial court admitted Mr. Dugan's statement. *Cruz*, 162 Ill. 2d at 335.

¶ 20    The defendant also sought to bring in evidence of Mr. Dugan's other crimes, since it corroborated Mr. Dugan's confession and was similar to the defendant's charged crime but the trial court denied that request. *Cruz*, 162 Ill. 2d at 340. In Mr. Dugan's other crimes, he kidnaped or attempted to kidnap girls and young women between the ages of eight and 27 years old. *Cruz*, 162 Ill. 2d at 341-42. In the kidnappings he raped the victims in his car in a secluded area and in some of those incidents he also killed the victim by either bludgeoning them in the head or drowning them. *Cruz*, 162 Ill. 2d at 341-42. The supreme court ruled that the other crimes evidence was admissible as probative evidence of whether Mr. Dugan's statements asserting his guilt were accurate and reliable to show that someone else committed the crime instead of Mr. Cruz. *Cruz*, 162 Ill. 2d at 352 (stating the distinct similarities between the underlying crime and the other

crimes evidence made the other crimes evidence admissible to show modus operandi of another offender).

¶ 21    "[W]here a defendant seeks to introduce other-crimes evidence to exculpate himself, there is usually no need for the trial court to be concerned with balancing probative value against prejudicial effect." *Cruz*, 162 Ill. 2d at 350. "[W]here defendant offers other-crime evidence, it should be admitted if it contains significant probative value to his defense. *Tate*, 87 Ill. 2d at 143.

¶ 22    In determining whether the other crimes evidence should be admitted, there must be a significant commonality of facts, sufficient to indicate that the perpetrator of both was the same. *Tate*, 87 Ill. 2d at 142-43. In *Tate*, 87 Ill. 2d at 140, the supreme court ruled that the facts did not meet that threshold. *Tate*, 87 Ill. 2d at 142 (stating that the court should not have admitted the other crimes evidence since the details of the underlying crime were not so distinct as to link it to the other crime since the details were typical of most shoplifters).

¶ 23    "The admissibility of evidence at trial is a matter within the sound discretion of the trial court, and that court's decision may not be overturned on appeal absent a clear abuse of discretion." *Illgen*, 145 Ill. 2d at 364. "An abuse of discretion will be found only where the trial court's decision is arbitrary, fanciful or unreasonable or where no reasonable man would take the view adopted by the trial court." (Internal quotation marks omitted.) *Illgen*, 145 Ill. 2d at 364. The abuse of discretion standard of review is the most deferential standard of review in the law. *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 77.

¶ 24    We note that Mr. Aseves fails to cite any cases where a defendant is seeking to introduce other crimes evidence as exculpatory evidence.  "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented." *Obert v. Saville*,

253 Ill. App. 3d 677, 682 (1993). "[I]t is not a repository into which an appellant may foist the burden of argument and research, [citations] it is neither the function nor the obligation of this court to act as an advocate or search the record for error." *Obert*, 253 Ill. App. 3d at 682. Nevertheless, we choose to review the issue on the merits.

¶ 25    Mr. Aseves sought to introduce the other crimes evidence to suggest an unknown offender committed the crime for which he was charged. The proffer made in the motion *in limine* indicated that the detectives would testify that two robberies were committed within an hour of the robbery of Mr. Guevara, which involved two black men in the same vicinity. Additionally, the detectives would testify that, though the victims of the uncharged robberies said the offender was a black man, they were not able to identify Mr. Aseves in a photograph array. The detectives further stated that the same blue minivan was at the scene of each of the three robberies. Mr. Aseves' counsel argued that the evidence would show that each of the robberies had likely been performed by the same person and the failure to identify Mr. Aseves in the other two robberies suggested that he did not commit the charged robbery.

¶ 26    On appeal, Mr. Aseves suggests that the jury would find it incredulous that two different groups of black men were committing these robberies almost simultaneously, and we agree. The State disagrees however that the only logical inference would be that Mr. Aseves did not commit the charged offense rather than infer that he committed all three. Mr. Aseves also argues on appeal that the introduction of the evidence would not have subjected him to any additional prejudice because he was not charged with those two other robberies.

¶ 27    While this court will not engage in a probative versus prejudicial impact balancing test regarding the other crimes evidence, since Mr. Aseves sought to introduce the evidence, it is

impossible to extricate the evidence from a prejudicial analysis. As the evidence showed at trial, Mr. Aseves had the most access to the vehicle used in the commission of the offense and was unequivocally identified by Mr. Guevara as the individual with the firearm. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) (the testimony of a single witness, if positive and credible, may constitute evidence sufficient to support a conviction). As a result, the jury could have likely found the other crimes evidence showed Mr. Aseves' guilt instead of exonerating him for the charged crime. The only relevance the other crimes evidence had was if it was perceived as evidence of his innocence. However, if the jury was inclined to reach the opposite conclusion, that other crimes evidence had no relevance to the jury and would most likely lead the jury to make improper conclusions. See Ill. R. Evid. 401 (eff. Jan. 1, 2011) (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Thus, the trial court was correct in its assessment that the other crimes evidence should be excluded, as it lacked relevance since he was not charged with those other crimes. *Jacobs*, 2016 IL App (1st) 133881, ¶ 77. Accordingly, we find that the trial court did not abuse its discretion by excluding the other crimes evidence.

¶ 28 Mr. Aseves next asserts that the trial court erred by making a finding of great bodily harm regarding his armed robbery conviction. He argues that the evidence is clear that Mr. Guevara, the charged victim of the armed robbery count, was unharmed and he concedes that he inflicted great bodily harm on Mr. Radanovich. His argument turns on the interpretation of "a victim" in section 3-6-3(a)(2)(iii) of the Unified Code of Corrections.

¶ 29    Since this issue on appeal involves statutory construction, "which is a question of law, our review is *de novo*." *People v. Salley*, 373 Ill. App. 3d 106, 109 (2007). The primary objective of statutory construction is to discern the legislature's intent, and the best way to ascertain that intent is the plain language of the statute. *People v. Gutman*, 2011 IL 110338, ¶ 12. When the statutory language is ambiguous, a court may use other interpretive aids such as legislative history to resolve the ambiguity. *In re Detention of* Powell, 217 Ill. 2d 123, 135 (2005). However, where the statute is clear and unambiguous, courts *may not* resort to aids of statutory construction. (Emphasis added.) *Powell*, 217 Ill. 2d at 135.

¶ 30    "[A] prisoner serving a sentence for *** armed robbery *** with a category I weapon or category II weapon, when the court has made and entered a finding *** that the conduct leading to conviction *** resulted in great bodily harm to a victim" shall serve no less than 85% of their sentence. 730 ILCS 5/3-6-3(a)(2)(iii) (West 2020). A trial court's findings of fact are reviewed under the manifest weight of the evidence standard. *People v. Deleon*, 227 Ill. 2d 322, 331 (2008).

¶ 31    We initially note that the trial court made a finding of great bodily harm regarding both convictions and Mr. Aseves failed to object to that finding as to the armed robbery conviction nor did he file a posttrial motion. As a result, he forfeits review of this issue. *People v. Hillier,* 237 Ill. 2d 539, 544 (2010). We review whether his forfeiture falls under the plain error exception.

¶ 32    An exception to the forfeiture rule exists in situations where the alleged error rises to the level of plain error. *People v. Roman*, 2013 IL App (1st) 102853, ¶ 19. Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides that "substantial or what have become known as plain errors may be noticed although they were not brought to the attention of the trial court." (Internal quotation marks omitted.) *People v. Sebby*, 2017 IL 119445, ¶ 48. Under the plain error doctrine,

a reviewing court may consider forfeited errors if the evidence was closely balanced or "the error was so egregious that [the] defendant was deprived of a substantial right and thus a fair trial." *Roman*, 2013 IL App (1st) 102853, ¶ 19. First, a defendant must prove there was a clear or obvious error. *Roman*, 2013 IL App (1st) 102853, ¶ 19. The burden of persuasion rests with the defendant, and the first step is to determine whether any error occurred. *Roman*, 2013 IL App (1st) 102853, ¶ 19. "Generally, sentencing decisions are a matter entirely within the discretion of the circuit court which reviewing courts will not disturb absent an abuse of that discretion." *People v. Robinson*, 383 Ill. App. 3d 1065, 1071 (2008).

¶ 33    In *Salley*, 373 Ill. App. 3d at 110, the Second District reviewed section 3-6-3(a)(2)(iii) of the Unified Code of Corrections, which addresses sentence credit for good behavior. In that case, the court stated that the legislature's word choice of "a victim" versus "the victim" "encompasses anyone who is injured by the defendant's conduct during the offense in question," not just the direct victim of the offense. *Salley*, 373 Ill. App. 3d at 110. To come to that conclusion, the court analyzed the Rights of Crime Victims and Witnesses Act (725 ILCS 120/3(a) (West 2004)), which prior to 2006, defined a "crime victim" as "*any person against whom a violent crime as been committed.*" (Emphasis in original.) *Salley*, 373 Ill. App. 3d at 111 (quoting 725 ILCS 120/3(a) (West 2004)). We agree with the Second District's interpretation.

¶ 34    Here, as defined in the Rights of Crime Victims and Witnesses Act, at the time of sentencing, the definition of a "crime victim" was modified to define victim as "any natural person determined by the prosecutor or the court to have suffered direct physical or psychological harm as a result of a violent crime perpetrated or attempted against that person." 725 ILCS 120/3(a) (West 2020). As stated in *Salley*, the plain language of section 3-6-3(a)(2)(iii) of the Unified Code

of Corrections means the trial court can look to see if the defendant, by his conduct during the commission of the crime, caused great bodily harm to any victim not just the victim of the offense.

¶ 35    Mr. Aseves argues that the named victim of the armed robbery, Mr. Guevara, was not harmed, even though he concedes that he inflicted great bodily harm on Mr. Radanovich. He argues that "[a]n event is proximately caused by a defendant's actions if they are a direct and foreseeable consequence" and the liability stops where the foreseeable chain of consequences is broken. The cases that he cites are felony murder cases where an individual died, and the question is whether that death occurred during the defendant's attempt to flee the underlying crime. Mr. Aseves further argues that the shooting of Mr. Radanovich was an unforeseeable consequence of his decision to rob Mr. Guevara. He states that, by the time of the shooting, the robbery was completed since Mr. Aseves and his co-offender had stolen the items and had made their way to escape.

¶ 36    We review this case under an abuse of discretion standard which is the most deferential standard on appeal. *Jacobs*, 2016 IL App (1st) 133881, ¶ 77. We are asked to consider whether the trial court's rationale that the shooting was a foreseeable result of Mr. Aseves' actions was "arbitrary, fanciful or unreasonable." *Illgen*, 145 Ill. 2d at 364. Given the fact that Mr. Aseves had just robbed Mr. Guevara and was walking away when Mr. Radanovich intervened, we cannot say that it is unreasonable to find the two incidents were related. Mr. Aseves does not deny that he caused great bodily harm to Mr. Radanovich when he shot him, and the trial court found that the great bodily harm was part of the underlying robbery of Mr. Guevara. We cannot say the court abused its discretion in finding that Mr. Radanovich was a victim under the definition of the statute for the armed robbery conviction. As a result, the trial court did not err when it made a great bodily harm finding as to the armed robbery conviction. Since no error occurred, the court's finding

cannot be considered plain error, and therefore, Mr. Aseves' forfeiture stands. Thus, we affirm Mr. Aseves' convictions and sentence, as well as the judgment of the trial court.

¶ 37                                          CONCLUSION

¶ 38    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 39    Affirmed.