2024 IL App (1st) 192218-U

FIFTH DIVISION
JANUARY 19, 2024

No. 1-19-2218

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 14596 |
| | ) | |
| ALBERT SMITH, | ) | Honorable |
| | ) | Arthur F. Hill, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

ORDER

¶ 1    *Held*:  The defendant's conviction is affirmed where his trial counsel did not offer ineffective assistance of counsel and there was no plain error from the State's closing arguments. The circuit court erred by sentencing the defendant as a Class X offender, so the cause is remanded to the circuit court to correct the mittimus.

¶ 2    On September 27, 2016, the State charged by information the defendant-appellant, Albert

Smith, with three counts of aggravated battery to a peace officer and one count of aggravated

battery with a deadly weapon. On August 6, 2019, the circuit court conducted a jury trial of Mr.

Smith on the aforementioned charges. At the conclusion of the trial, the jury found Mr. Smith

guilty of aggravated battery of a peace officer, and he was sentenced to 8 years' imprisonment. On appeal, Mr. Smith argues that: (1) he was provided with ineffective assistance of counsel for failing to provide an expert on cross-racial identification; (2) there was plain error committed during the State's closing arguments; and (3) the trial court erred by sentencing him as a Class X offender. For the reasons that follow, we affirm Mr. Smith's conviction and remand the cause to the circuit court to correct the mittimus.

¶ 3                                    BACKGROUND

¶ 4     On September 27, 2016, the State charged Mr. Smith by information with three counts of aggravated battery to a peace officer and one count of aggravated battery with a deadly weapon. Mr. Smith elected to proceed via a jury trial on the charges. On August 6, 2019, the trial court conducted a jury trial. During the trial, the State called two primary occurrence witnesses: Chicago Police Department Officer Terrence Pratcher and Chicago Police Department Officer Anthony Rosen.

¶ 5     Officer Pratcher testified that at the time of the trial, he had been working for the Chicago Police Department for approximately 12 years. On May 26, 2016, Officer Pratcher was patrolling with Officer Rosen and Officer Rick Caballero in an unmarked Ford Explorer when they were approached by their confidential informant about a black man selling drugs in a tan Cadillac, bearing partial license plate number "E30" on the 1600 block of Homan Avenue. At the time, the officers were in plainclothes, which was a bulletproof vest with a police star, either on a chain or embroidered on their bulletproof vests. Though defense counsel objected to the admission of the statement of the confidential informant, it was allowed for the limited purpose of the officers' subsequent actions. Officer Pratcher and his partners relocated to the area referenced by the

confidential informant but did not see the vehicle. As a result, they drove around the area for about 10 minutes looking for the car. About an hour later, while traveling southbound on Homan Avenue from 16th Street, they saw a parked car matching the description including the partial license plate, "E30." When they drove past the vehicle and slowed down to make a U-turn, the black man they saw in the driver seat of the vehicle drove away onto 16th Street. The officers followed slowly behind the vehicle hoping it would stop but eventually lost sight of the vehicle. Then, they saw the vehicle parked around 3342 West Odgen and they parked next to the vehicle. All the officers exited the vehicle, and Officer Pratcher went to the driver's side window, where he saw Mr. Smith, whom he identified in court. Officer Pratcher knocked on the window and tried to get Mr. Smith to roll down his window but Mr. Smith shook his head, "no." Officer Pratcher then asked Mr. Smith to step out of the vehicle and he again declined to do that. Instead, Mr. Smith started the car, shifted the car into drive, and then turned the car in the direction of Officer Pratcher. Before Officer Pratcher could move out of the way, the tan Cadillac quickly accelerated and hit him on his right leg. He ended up on the hood of the vehicle for about 10 feet, while the car traveled westbound on Ogden, before falling off the hood. The other officers tried to run after the vehicle, which kept going, and then they checked on Officer Pratcher. Then, Officer Pratcher and his fellow officers entered their squad car, called dispatch about the description of the tan Cadillac, and drove around attempting to locate the Cadillac. Other officers found the car abandoned in a vacant lot.

¶ 6    At the police station, about 30 minutes after Officer Pratcher was struck by the car, Officer Rosen showed him a photograph, which he identified as the man who drove into him, Mr. Smith. Officer Pratcher then went to the hospital, where he was diagnosed with "bruising and soft tissue damage to [his] right leg." Mr. Smith's photograph was added to the wanted board for Officer

Pratcher's police district. On cross-examination, he conceded that he did not view a photo array or a lineup in this case.

¶ 7     Officer Rosen testified to the same details that Officer Pratcher stated on his direct examination, mainly the circumstances leading to the encounter with Mr. Smith, their attire that day, and also how Officer Pratcher was injured. He added the detail that when they approached the parked car, before exiting the vehicle, he observed Mr. Smith was reclined all the way back in the driver's seat of the tan Cadillac. He identified Mr. Smith in court. He looked up the license plate of the tan Cadillac in the Illinois Secretary of State's database and received Mr. Smith's name and information. With that information, he pulled up Mr. Smith's photograph and confirmed he was the driver of the tan Cadillac "when it struck Officer Pratcher."

¶ 8     After the close of the trial evidence, the jury found Mr. Smith guilty of aggravated battery to a peace officer and not guilty on the count of aggravated battery with a deadly weapon. On August 27, 2019, the trial court sentenced him to 8 years' imprisonment. The court found he was Class X eligible because of prior felony convictions. Mr. Smith mailed his notice of appeal to the circuit court in a letter postmarked September 24, 2019.

¶ 9                                        ANALYSIS

¶ 10    We note that we have jurisdiction to consider this matter, as Mr. Smith filed a timely notice of appeal. See Ill. S. Ct. R. 606 (eff. July 1, 2017); see also *People v. English*, 2023 IL 128077, ¶ 25.

¶ 11    Mr. Smith argues that: (1) his trial counsel offered ineffective assistance of counsel when counsel failed to call a cross-racial identification expert; (2) the State made improper comments

during closing arguments; (3) the trial court erred by sentencing Mr. Smith as a Class X offender since one of his predicate felonies was committed when he was a minor.

¶ 12    To prevail on a claim of ineffective assistance of counsel, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To establish deficient performance, a defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219 (2004) (citing *Strickland*, 466 U.S. at 687). "Effective assistance of counsel refers to competent, not perfect representation." *Evans*, 209 Ill. 2d at 219 (quoting *People v. Stewart*, 104 Ill. 2d 463, 491-92 (1984)). Mistakes in trial strategy or tactics do not necessarily render counsel's representation defective. See *People v. Hayes*, 2021 IL App (1st) 172417, ¶ 78 (finding that the decision to not file a motion to suppress is typically a matter of trial strategy, in which courts of review give great deference to counsel's decision).

¶ 13    To establish the second prong of *Strickland*, prejudice, a defendant must show that "but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 4 (2008). "To establish prejudice in the guilty plea context, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *People v. Valdez*, 2016 IL 119860, ¶ 29 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35. Speculation as to what an expert witness will say is insufficient to prove the prejudice prong of a Strickland analysis. *People v. Elliot*, 2022 IL App (1st) 192294, ¶ 49.

¶ 14    During closing arguments, defense counsel for the first time attempted to argue that cross-racial identifications are "different" and that the opportunity for Officer Pratcher to view Mr. Smith was short, calling it a "quick encounter." The State promptly objected, and the objection was sustained. Based on this exchange, Mr. Smith argues that his trial counsel provided ineffective assistance of counsel for arguing an unsupported defense theory. Our caselaw is clear, however, that a defendant cannot meet the prejudice prong of the Strickland test for failing to call an expert witness based solely on speculation as what a potential witness would have said. *Elliot*, 2022 IL App (1st) 192294, ¶ 49; *People v. Bauer*, 393 Ill. App. 3d 414, 424 (2009). Moreover, the officers' identification was not the only evidence linking Mr. Smith to the vehicle since the tan Cadillac that was stopped was registered to Mr. Smith. While the vehicle ownership alone was not a sufficient basis for an identification, the vehicle registration, in addition to the interaction with defendant, made it unlikely that this was a case of misidentification due to cross-racial identification. As a result, we fail to find that Mr. Smith can meet the prejudice prong and find that counsel did not provide ineffective assistance of counsel.

¶ 15    Mr. Smith next argues that the State made improper closing arguments, which admitted hearsay evidence for an improper purpose and shifted the burden of proof. Mr. Smith did not object to any of the alleged improper closing arguments, therefore forfeited that argument. *People v. Hillier,* 237 Ill. 2d 539, 544 (2010). However, we review whether it falls under the plain error exception to the forfeiture rule.

¶ 16    An exception to the forfeiture rule exists in situations where the alleged error rises to the level of plain error. *People v. Roman*, 2013 IL App (1st) 102853, ¶ 19. Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides that "substantial or what have become known as plain

errors may be noticed although they were not brought to the attention of the trial court." (Internal quotation marks omitted.) *People v. Sebby*, 2017 IL 119445, ¶ 48. Under the plain error doctrine, a reviewing court may consider forfeited errors if the evidence was closely balanced or "the error was so egregious that [the] defendant was deprived of a substantial right and thus a fair trial." *Roman*, 2013 IL App (1st) 102853, ¶ 19. First, a defendant must prove there was a clear or obvious error. *Roman*, 2013 IL App (1st) 102853, ¶ 19. The burden of persuasion rests with the defendant, and the first step is to determine whether any error occurred. *Roman*, 2013 IL App (1st) 102853, ¶ 19.

¶ 17    The State is afforded wide latitude in closing arguments. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). The State may argue to the jury, facts, and reasonable inferences drawn from the evidence. *People v. Terry*, 312 Ill. App. 3d 984, 993 (2000). In reviewing remarks made during closing arguments, this court asks whether the remarks created a substantial prejudice against the defendant such that it is impossible to say whether or not a guilty verdict resulted from the remarks. *Wheeler*, 226 Ill. 2d 92 at 123. Statements must be considered in the context of closing arguments as a whole, and the State can reasonably respond in rebuttal to the defense's characterizations of the evidence or case. *People v. Evans*, 209 Ill. 2d 194, 225 (2004). If the jury could have reached a contrary verdict had the improper remarks not been made, or if this court cannot say that the State's improper remarks did not contribute to the defendant's conviction, a new trial should be granted. *Wheeler*, 226 Ill. 2d 92 at 123.

¶ 18    The first remark argued by Mr. Smith was that Mr. Smith's "actions of choosing to be uncooperative show that he knows exactly who he is dealing with." Mr. Smith argues that these statements were meaningless unless the State asked the jury to take the hearsay evidence for the

truth of the matter asserted. We do not share that sentiment.

¶ 19     The thrust of Mr. Smith's trial counsel argument was that Mr. Smith did not know it was officers who were trying to initiate contact with Mr. Smith on the date of the incident. However, that contention was belied by the trial evidence, which was exemplified in the State's closing argument. When Mr. Smith spotted the officers turning in his direction, he drove away and when they followed him, he kept driving until he successfully evaded them. Then, according to Officer Rosen, he reclined his seat all the way back, in what appeared to be an attempt to avoid being seen. When Officer Pratcher knocked on Mr. Smith's window and asked him to lower his window, Mr. Smith shook his head to indicate a denial of the request. All of those actions, primarily evading the officers while driving and reclining his seat, show that he knew he was dealing with police officers. The State's remarks did not ask the jury to consider inadmissible hearsay about the officers' initial interest in Mr. Smith. Rather, following suit of defense counsel, the State argued the trial evidence in a persuasive way to fit its narrative of the events. Additionally, both the State and the trial court admonished the jury, that while the State would make an argument, only the trial court could instruct the jury about the law. There was nothing impermissible about the State's argument.

¶ 20     The next portion of the closing, which Mr. Smith argued was improper, stated:

> "Counsel talks about beyond a reasonable doubt beyond a reasonable doubt. It's not any
> doubt whatsoever. It's not a doubt that you can make up. It's not a doubt that you want to
> make up. I'll talk about that in a second. It's a reasonable doubt. Is it reasonable that those
> two officers got together and decided let's put it on this guy. You saw them right there,
> those two officers. They put this on this guy. Is that reasonable?"

¶ 21    Mr. Smith cites *People v. Wilson*, 199 Ill. App. 3d 792 (1990) for the proposition that the State cannot discuss the credibility of its witnesses when discussing its burden of proof. The case, however, does not stand for that position. In the *Wilson* case, 199 Ill. App. 3d at 796, the prosecutor argued that his position involves an obligation and a duty to only prosecute guilty people and dismiss charges against innocent people. This clearly was a way to bolster the trial evidence based solely on his position of public trust rather than the evidence. That is not what the State did here. Here, the State argued that if the officers' statements are believed, it has met its burden of proof but the only way for it not to meet its burden is to suggest that all of the witnesses were liars or, as Mr. Smith suggested on appeal, mistaken. While the State could have been more precise in its language and questioned whether it was reasonable that both officers were mistaken in their identification of Mr. Smith, that was not an improper argument error which shifted the burden of proof to Mr. Smith. Since we found that there was no error, in regard to the closing arguments, there can be no plain error. *People v. Roman*, 2013 IL App (1st) 102853, ¶ 19 (stating the first step in a plain error analysis is to determine if any error occurred).

¶ 22    Mr. Smith's last argument revolved around his sentencing. He argued that the trial court erred by sentencing him as a Class X offender based on his prior felonies including a juvenile conviction which he states could not be used as a predicate for the enhancement. The State responded by arguing that the issue is moot since Mr. Smith has completed his sentence including his mandatory supervised release (MSR).

¶ 23    An issue on appeal becomes moot when events occurring after the appeal render it impossible for the reviewing court to grant effective relief. *In re Christopher K.*, 217 Ill. 2d 348, 358-59 (2005). Generally, courts of review do not handle moot issues. *Christopher K.*, 217 Ill. 2d

348 at 359. However, while the completion of a defendant's sentence renders a challenge to the sentence moot, a challenge to the conviction is not. *Christopher K.*, 217 Ill. 2d 348 at 359.

¶ 24    Here, Mr. Smith challenges only his sentence, which he has completed, and not his conviction. Mr. Smith correctly argues that the Class X sentence would have future repercussions on his sentence if he is convicted of a crime in the future. As a result, we find the issue is not moot and review the matter on the merits.

¶ 25    In *People v. Stewart*, 2022 IL 126116, ¶ 22, our supreme court found that juvenile offenses do not qualify as a predicate offense under section 5-4.5-95 of the Uniform Code of Corrections (730 ILCS 5/5-4.5-95 (West 2016)), which qualifies a defendant as subject to mandatory Class X sentencing if he or she has two prior felony convictions. In this case, the trial court found that Mr. Smith was subject to mandatory Class X sentencing due in part to a 1996 juvenile conviction for a drug offense. Since his juvenile offense could not be considered as a predicate offense, we find that the trial court erred in its imposition of his sentence. Unfortunately, Mr. Smith has completed his term of imprisonment and mandatory supervised release. Nonetheless, we direct the circuit court to correct the mittimus to reflect a Class 2 sentencing for Mr. Smith's conviction for aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4) (West 2016)). 720 ILCS 5/12-3.05(h) (West 2016) ("Aggravated battery as defined in subdivision (a)(4), (d)(4), or (g)(3) is a Class 2 felony").

¶ 26                                  CONCLUSION

¶ 27    For the foregoing reasons, we affirm Mr. Smith's conviction for aggravated battery to a peace officer and remand the cause to the circuit court of Cook County for the limited purpose of correcting the mittimus.

¶ 28     Affirmed in part; remanded in part.